Filed 8/28/25  In re A.A. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re A.A., a Person Coming Under the Juvenile Court Law. | B338028 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>R.T.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 20CCJP03983A) |

APPEAL from an order of the Superior Court of Los Angeles County, Kristen Byrdsong, Judge Pro Tempore. Affirmed.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Senior Deputy County Counsel, for Plaintiff and Respondent.

In this appeal from an order establishing a legal guardianship for R.T.'s (Mother's) daughter A.A. (Minor), Mother argues the juvenile court and the Los Angeles County Department of Children and Family Services (the Department) did not fully comply with their obligations under California law related to the Indian Child Welfare Act (Cal-ICWA). Specifically, Mother argues the Cal-ICWA inquiry was inadequate because the Department had contact information for some of Mother's and father F.A.'s (Father's) relatives but did not question them about potential Indian ancestry.[1] We consider whether the juvenile court's Cal-ICWA investigation, which included notice to tribes provided as a prudential matter, was sufficient to reach a reliable conclusion that Cal-ICWA did not apply.

## I. BACKGROUND

*A.      Summary of Dependency Proceedings*

Mother has six children. When these dependency proceedings commenced, her five older children were under the jurisdiction of the dependency court in San Bernardino County and were receiving permanent placement services. Two of the five older children are also Father's children. Father also has one adult child, Kenneth, who has a different mother.

The Department began investigating the family's welfare in July 2020 when it was informed Mother and her significant other engaged in domestic violence in Minor's presence. That same month, the Department filed a dependency petition alleging Minor (then six years old) was at substantial risk of suffering serious physical harm because (1) Mother's significant other

---

[1]      Father is not a party to this appeal.

physically attacked her in Minor's presence on numerous occasions, and (2) Mother physically abused two of her five other children by striking them with a belt. The Department later filed an amended petition adding allegations that Father had a history of endangering his other children, failed to reunify with them after dependency cases were opened, and had a criminal history that endangered Minor.

When the dependency proceedings commenced, Minor's whereabouts were unknown and Mother refused to disclose her location.[2] When the Department eventually located Minor, it placed her in foster care.

The juvenile court assumed jurisdiction over Minor in April 2021, sustaining all but one of the counts in the petition.[3] At a disposition hearing in June 2021, the court terminated Mother and Father's reunification services.

In October 2022, the juvenile court granted Mother's section 388 petition and ordered reunification services for her. In June of the following year, the court again terminated reunification services and set the matter for a section 366.26 permanency planning hearing.

The court held the permanency planning hearing in May 2024. The court appointed a guardian for Minor and terminated juvenile court jurisdiction.

---

[2]     When Father was first contacted by the Department, he reported he had not seen Minor in a year.

[3]     The juvenile court dismissed the count alleged under Welfare and Institutions Code section 300, subdivision (a). Undesignated statutory references that follow are to the Welfare and Institutions Code.

### B. Cal-ICWA Investigation

#### 1. Father's statement of Indian ancestry, investigation, and prudential notice

In October 2020, when Father first appeared in the action, he filed an ICWA-020 Parental Notification of Indian Status form advising the court he was or might be a member of, or eligible for membership in, the Choctaw tribe.[4] The juvenile court ordered the Department to investigate the claim and further instructed the Department (independent of legal requirements) to provide notice to all three federally recognized Choctaw tribes.

In early October 2020, a Department social worker interviewed Father regarding the Indian ancestry in his family. Father said he has Choctaw Indian ancestry on his mother's side of the family. Father did not know if any family members were registered with a tribe. When asked if any other relatives would have more information, Father said no. He also said the San Bernardino County juvenile court did not find any Indian ancestry in prior proceedings involving some of his other children.

The social worker also spoke with paternal aunt Desiree, and she similarly reported there was Indian ancestry on her mother's side of the family. Desiree said no one in her family was registered with a tribe, but she was told by her mother and grandmother that they had Indian ancestry in the Creek tribe. Desiree's mother and grandmother were deceased, however, and she said no other relatives would have more information. During a later conversation with a Department social worker, Desiree

---

[4] Father was represented by counsel, but he was not present at the hearing.

4

said her great-great-grandmother Adeline was a member of the Choctaw tribe.  But Desiree explained Minor would not qualify for membership in the tribe because Adeline was too distant an ancestor—explaining she (Desiree) was not even a tribal member.

The appellate record indicates the Department sent notices to twelve Choctaw and Creek tribes.  The notice forms included Minor's name and the names of Mother, Father, all four biological grandparents, and all paternal great-grandparents.[5]  The notices included the date and place of birth of both paternal grandparents, as well as the paternal grandmother's date of death.  It included the dates of birth and death for both paternal great-grandmothers; the names of paternal great-grandfathers (with no other associated information); and the date and place of birth for both maternal grandparents.  No information on the maternal great-grandparents was included in the notices.

The Department contacted or attempted to contact certain other paternal relatives, but it does not appear the Department asked them about potential Indian ancestry.  The Department attempted to call paternal aunt Stacie in September 2020 and March 2024 but was unable to reach her.  (The social worker who called was unable to leave a message either time because her mailbox was full.)  A Department social worker spoke to Father's adult son Kenneth once, and also had contact with paternal cousin Brianna (the daughter of paternal aunt Desiree).  The record also does not reflect the Department discussed Indian

---

[5]     The Department had sent an earlier round of ICWA notices to the three Choctaw tribes, which included some, but not all, of the information described above.  All three tribes were also included in the later set of notices.

ancestry with any of Father's other minor children, who were subject to dependency court jurisdiction in San Bernardino County.

### 2. Mother's statement of Indian ancestry, investigation, and prudential notice

Mother first appeared in dependency court in November 2020. She submitted an ICWA-020 form asserting the maternal side of her family had Cherokee ancestry. The juvenile court ordered the Department to investigate.

A Department social worker interviewed maternal aunt Reshaunda, who stated the family had Indian ancestry on her mother's side of the family, specifically, ties to the Seminole Tribe. She also stated she was attempting to trace the family's Indian ancestry.

The appellate record indicates the Department sent notice forms to six Cherokee and Seminole tribes. The notice identified the Minor's name and the names of Mother, Father, all four biological grandparents, and all eight great-grandparents. (Though the notices were sent as a result of Mother's claim of potential Indian ancestry, the box asking for "Tribe or Band, and Location" for each maternal relative, including Mother, stated "Does not apply"; the list of applicable tribes was instead included in the boxes for the paternal relatives.) The form included the date and place of birth for the maternal and paternal grandparents. It included the place of birth of one maternal great-grandmother but no additional information. The form also included the names and dates of birth for both paternal great-grandmothers.

### 3. Additional Cal-ICWA Details and Family Contacts

An August 2020 report from the San Bernardino County dependency proceeding involving Mother's five older children indicated the social worker in that case repeatedly inquired about potential Indian ancestry during monthly contacts with maternal great aunt Gladys and maternal uncle Raymond. Both consistently asserted they were not aware of any Indian ancestry in their family or for any of the children. The status report also represented Cal-ICWA did not apply to any of the five children.

The Department contacted or attempted to contact certain other maternal relatives, and for those others where contact was made, there is no indication in the record that the Department asked about potential Indian ancestry. A Department social worker spoke to maternal grandmother Ramona a few times early in the dependency proceedings (she died in late 2021), but Ramona subsequently blocked calls from the social worker's number and purported not to be able to hear when the social worker called from a different phone number.[6] A social worker also spoke with maternal grandfather Roosevelt once early in the proceedings when the Department was trying to locate Minor, but Roosevelt did not respond to subsequent Department attempts to contact him. The Department had contact information for maternal uncle Malik, but he did not answer a

---

[6] Maternal grandmother Ramona appeared at one of the dependency court's hearings in October 2020. Though the court spoke to her at the hearing regarding the possibility of placing Minor with her siblings, the court did not ask about potential Indian ancestry.

social worker's call in March 2024 and the social worker was unable to leave a voicemail because the mailbox was full. The Department was also aware of a maternal great aunt Gerolyn, but there is no indication in the record that she had any contact with the Department while this case was pending. The record also does not reflect the Department discussed Indian ancestry with any of Mother's older children.

C.    *Tribal Responses to the Cal-ICWA Notices and the Juvenile Court's Cal-ICWA Finding*

Between October 2020 and April 2021, the Department received responses from nine tribes indicating Minor was not an "Indian child" as defined by ICWA: the Mississippi Band of Choctaw Indians; the Choctaw Nation of Oklahoma; the Cow Creek Band of Umpqua Tribe of Indians; the Poarch Band of Creek Indians; the United Keetoowah Band of Cherokee Indians; the Berry Creek Rancheria of Maidu Indians of California (the Tyme Maidu tribe); the Cow Creek Sioux Tribe; the Eastern Band of Cherokee Indians; and the Cherokee Nation.

Between March and May 2021, a Department social worker called the eight tribes from which they had not received a response on six separate dates, and left voicemail messages requesting a return phone call.

At a hearing in September 2021, the juvenile court found there was no reason to know Minor was an Indian child, and thus Cal-ICWA did not apply. The court maintained that finding throughout the subsequent proceedings.

## II. DISCUSSION

Mother appeals the guardianship order and argues the Department's Cal-ICWA inquiry was inadequate because the Department did not make inquiry of maternal grandfather Roosevelt, paternal aunt Stacie, and paternal cousin Brianna, nor did it make contact with maternal great aunt Gerolyn or maternal uncle Malik. Mother additionally complains the Department did not attempt to contact four of Minor's half-siblings on the paternal side of the family. The Department argues its inquiry, including the notices sent to tribes (even without every demographic field on the notice form completed) with negative results, was adequate to discharge its Cal-ICWA obligation—emphasizing it attempted to contact many of the family members Mother now identifies (and lost contact with others after they were no longer interested in talking to the Department). On the facts presented in this case, the Department has the better argument.[7]

---

[7] We invited the parties to file supplemental briefs discussing "whether the version of Welfare and Institutions Code section 224.2 as amended by Assembly Bill No. 81 (2023-2024 Reg. Sess.) (Stats. 2024, ch. 656) applies in this appeal and, if so, the effect the amendment has, if any, on the proper disposition of the appeal." Mother's supplemental brief argued the amendment was relevant only because it establishes the duty to inquire begins much sooner before placement of a child in temporary

9

Under Cal-ICWA, the Department and the juvenile court have "an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child."  (§ 224.2, subd. (a); see also Cal. Rules of Court, rule 5.481(a).)  Section 224.2, subdivision (b) states "[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."  Subdivision (e)(1) of the same statute explains "[t]here is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member . . . or may be eligible for membership . . . in an Indian tribe."  Under section 224.2, subdivision (e)(2), when reason to believe a child is an Indian child exists, "further inquiry is necessary to help the court, social worker, or probation officer determine whether there is reason to know a child is an Indian child" and such further inquiry includes contacting (among others) the tribe or tribes in question.  (§ 224.2, subd. (e)(2)(C).)  This contact with tribes "shall, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of notices

---

custody and because it "applies the inquiry parameters contained in section 224.1, which the statute previously only explicitly assigned to the juvenile court, to the Department."  The Department's supplemental brief contended the amendment did not apply to this appeal and would not change its view that affirmance was required even if it did.

under [ICWA]. Contact with a tribe shall include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case."[8] (§ 224.2, subd. (e)(2)(C).)

For our purposes as a reviewing court, we must decide whether the Department's and the juvenile court's discharge of these statutory directives was adequate to reach a reliable conclusion about the applicability of Cal-ICWA. (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1134 ["The juvenile court's factual finding that [Cal-]ICWA does not apply is 'subject to reversal based on sufficiency of the evidence. (§ 224.2, subd. (i)(2).)'"]; see also *id.* at 1141 [a "juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review"]; *id.* at 1153 (conc. opn. of Kruger, J.); *In re E.W.* (2023) 91 Cal.App.5th 314, 323.)

---

[8] When there is reason to know a child is an Indian child, the Department is *required* to provide formal notice to the tribe or tribes in question as provided in section 224.3. (§§ 224.2, subd. (f), 224.3, subd. (a)(5).) Nothing in Cal-ICWA, however, precludes a juvenile court from doing what the court did here: ordering the Department to send notices to possibly implicated tribes as a prudential matter and to aid in discharging its duty to determine Cal-ICWA's applicability. (See, e.g., *In re P.H., Jr.* (2024) 98 Cal.App.5th 992, 996, fn. 3 ["The Department and the juvenile court may at times decide it is advisable to provide notice to tribes as a prudential matter even when such notice is not statutorily required"]; *In re D.F.* (2020) 55 Cal.App.5th 558, 571 ["A suggestion of Indian ancestry is not sufficient under ICWA or related California law to trigger the notice requirement"].)

11

Taking the maternal side of Minor's family first, Mother claimed possible Cherokee heritage and maternal aunt Reshaunda, whom the Department interviewed, said the family had Seminole heritage. The Department obtained reporting from dependency proceedings in another county involving Mother's children where Cal-ICWA was found not to apply and maternal great aunt Gladys and maternal uncle Raymond both denied any Indian ancestry in their family. The Department had some early contacts with now-deceased maternal grandmother Ramona (during which we have no indication Cal-ICWA matters were discussed), but she thereafter refused to have any communication with the Department. The Department also made one initial contact with maternal grandfather Roosevelt (again when we have no information Cal-ICWA was discussed), but he thereafter declined to have any communication with the Department too. The Department attempted to contact maternal uncle Malik, but he was unavailable.

As a result of the information the Department was able to obtain, the Department sent notices to the federally recognized Cherokee and Seminole tribes, and none responded Minor was a tribal member or eligible for membership. We acknowledge the notices sent were not fully complete, but they didn't have to be— formal notice was not statutorily required here. There was sufficient information on the notices (names of all parents and great-grandparents plus some additional identifying information) that, when combined with the reporting the Department obtained about Mother's San Bernardino County dependency proceeding and the inability to inquire with other maternal relatives who ceased contact with the Department (see, e.g., *In re D.S.* (2020) 46 Cal.App.5th 1041, 1053 [social services agency "not required to

12

'cast about' for information or pursue unproductive investigative leads"]), we believe the inquiry made was adequate to reach a reliable conclusion that no further Cal-ICWA process was required as to the maternal side of the family.

Turning to the paternal side of the family, Father claimed he may have some Choctaw ancestry, but he volunteered that the San Bernardino County juvenile court proceedings did not find any Indian ancestry in earlier proceedings involving his other children. Paternal aunt Desiree told the Department no one in her family was registered with a tribe but she was told by her mother and grandmother that they had Indian ancestry in the Creek tribe. Her mother and grandmother were deceased, though, and Desiree said no other relatives would have information. Desiree also said her great-great-grandmother Adeline was a member of the Choctaw tribe, but Desiree explained Minor would not qualify for membership in the tribe because Adeline was too distant an ancestor—explaining she (Desiree) was not even a tribal member. The Department also twice attempted to call paternal aunt Stacie but was unable to reach her.[9]

As with the maternal side of the family, the information the Department obtained allowed it to send notices to the Choctaw and Creek tribes identified as a potential source of ancestry, and none responded Minor was a tribal member or eligible for

---

[9]     The Department did have contact (but apparently no Cal-ICWA discussion) with Father's adult son and Desiree's daughter, but there is no reason to believe they would have greater insight into any possible Indian heritage than Father or Desiree themselves.

membership.  Some of the fields on these formal notice forms were incomplete too, but there was sufficient information (names of all biological grandparents, all paternal great-grandparents, and some additional identifying information) that, combined with the other evidence developed by the Department and the unavailability of other potentially productive investigative leads, we believe the inquiry made was adequate to reach a reliable conclusion that no further Cal-ICWA process was required as to the paternal side of the family.

## DISPOSITION

The juvenile court's order is affirmed.


## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.

We concur:


HOFFSTADT, P. J.


KIM (D.), J.